NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
ALEXANDRA M. MICHAEL
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Email: Alexandra.m.michael@usdoj.gov
Counsel for Plaintiff United States

FILED
2019 MAY 17 AM 11:06
U.S. MAGISTRATE JUDGE
BY____

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MELVIN DILLON and ROBERT DILLON<br><br>Defendant. | Case No.:   2:19-mj-00361-NJK<br><br>CRIMINAL COMPLAINT<br><br>Count One<br>21 U.S.C. §§§ 846, 841(a)(1) and 841(b)(1)(B)(vi) – Conspiracy to Distribute a Controlled Substance (Fentanyl)<br>Count Two<br>18 U.S.C. §§ 922(g)(1) and 924(a)(2) – Felon in Possession of a Firearm<br>Count Three:<br>18 U.S.C. §§ 922(g)(1) and 924(a)(2) – Felon in Possession of Ammunition |

Before the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being duly sworn, deposes and states:

Count One
Conspiracy to Distribute a Controlled Substance (Fentanyl)
21 U.S.C. §§§ 846, 841(a)(1), and 841 (b)(1)(B)(vi)

1

Beginning from a time unknown, and continuing up to and including May 15, 2019 in the District of Nevada,

MELVIN DILLON and ROBERT DILLON,

defendants herein, and others known and unknown did knowingly and intentionally combine, conspire, confederate and agree with individuals known and unknown to distribute forty (40) grams or more of a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841((b)(1)(B)(vi).

## Count Two
### Felon in Possession of a Firearm
### 18 U.S.C. §§ 922(g)(1) and 924(a)(2)

On or about April 18, 2019 in the District of Nevada,

MELVIN DILLON,

the defendant herein, possessed a firearm, to wit: a Crown City Arms, .45 caliber pistol, bearing serial number 04575, in and affecting interstate commerce and said firearm having been shipped and transported in interstate commerce, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: Attempted Coercion, Possession of a Controlled Substance for the Purpose of Sale, and Ex-Felon in Possession of a Firearm on or about March 5, 2015 in the Second Judicial District of Nevada, Washoe County, Case No. CR13-2046, and did so knowingly, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## Count Three
### Felon in Possession of Ammunition
### 18 U.S.C. §§ 922(g)(1) and 924(a)(2)

On or about May 15, 2019 in the District of Nevada,

ROBERT DILLON,

the defendant herein, possessed ammunition, to wit: six rounds of .380 caliber ammunition containing the head stamp "Aquila" that was manufactured in Mexico, in and affecting interstate and foreign commerce and said ammunition having been shipped and transported in interstate and foreign commerce, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: Battery with Intent to Commit Robbery on or about May 23, 1995 in the Second Judicial District of Nevada, Washoe County, Case No. CR95-0821 and Possession of a Controlled Substance on or about June 27, 2002 in the Second Judicial District of Nevada, Washoe County, Case No. CR02-0658, and did so knowingly, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

1. Your Complainant is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has been since 1999. From 1997 to 1999, I was a Special Agent with the Federal Emergency Management Agency. From 1995 to 1997, I was an Inspector with the US Customs Service. In 1992, I obtained a Bachelor of Arts Degree in Criminal Justice from the University of Nevada, Reno. I have completed a California Law Enforcement Academy (1994), the US Customs Service Inspector Academy (1995), US Inspector General Academy (1997), Federal Law Enforcement Criminal Investigator Academy (1999) and ATF Special Agent Academy (1999). I am currently assigned to the ATF Reno Field Office in Reno, NV.

2. The facts in this complaint come from my personal observations, my training and experience, and information obtained from other agents and witnesses. The following information contained within this criminal complaint is based upon your Complainant's participation in this investigation or was provided to him by other law enforcement personnel. This complaint is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

3. Based on the facts set forth in this complaint, there is probable cause to believe that violations of 21 U.S.C. §§ 841 (distribution of narcotics) and 846 (conspiracy to distribute narcotics) and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm/ammunition) have been committed by MELVIN DILLON (M. DILLON) and ROBERT DILLON (R. DILLON).

4. On April 10, 2019, ATF CI #1 and CI #2 traveled to 1001 East Carey Way, Apartment 809, Las Vegas, NV and met with M. DILLON in the parking lot of the apartment complex. The CIs discussed with M. DILLON the purchase of Fentanyl. M. DILLON offered the CIs a sample of Fentanyl, which they refused. M. DILLON agreed to sell ½ ounce of Fentanyl for $700.00. M. DILLON again offered a sample of Fentanyl, which CI #1 accepted. The suspected fentanyl weighed approximately 1.1g with packaging and was placed into ATF custody as Item 1. Due to safety concerns, the Fentanyl was not field tested.

5. On April 12, 2019, ATF SA Zayas, in an undercover capacity, and in the company of a CI #1 and CI #2, traveled to 1502 South Las Vegas Boulevard, Las Vegas, Nevada. In his undercover capacity, SA Zayas portrayed himself as only speaking Spanish and used the CIs to translate. CI #1 often referred to SA Zayas as his/her "cousin." Upon arriving, SA Zayas observed M. DILLON standing in an alleyway at the location. CI #1 parked his/her vehicle and M. DILLON subsequently entered the vehicle. SA Zayas exchanged greetings with M. DILLON. M. DILLON advised that he did not have the Fentanyl on his person and needed to retrieve it. M. DILLON exited the vehicle and walked to a planter that was directly in front of the vehicle. M. DILLON took possession of an item from the planter and returned to the vehicle. M. DILLON removed, from within a snack package, a clear plastic baggie containing suspected Fentanyl. SA Zayas weighed the baggie and found the baggie to weigh less than a half (1/2) an ounce. SA Zayas advised, through CI #1, that the amount was less than the amount being

offered for sale. SA Zayas requested that the amount missing be added to the next transaction. During this time, M. DILLON explained the different purities of Fentanyl that could be purchased and the importance of following a specific formula to dilute the narcotic. CI #1 and SA Zayas discussed with M. DILLON purchasing larger quantities in the future. M. DILLON advised CI #1 and SA Zayas that they could receive the formula, purchasing "raw" Fentanyl, from his source but that they had to follow the formula otherwise according to M. DILLON they would "kill someone, bro." CI #1 questioned M. DILLON concerning the price. M. DILLON responded that the price per ounce, of what he was selling on this date, would be two thousand eight hundred dollars ($2,800.00). CI #1 then questioned M. DILLON if he would lower the price is he/she purchased multiple ounces. M. DILLON replied in the affirmative. SA Zayas provided M. DILLON with seven hundred dollars ($700.00) to complete the transaction. SA Zayas, CI #1 and CI #2 departed the area. The suspected Fentanyl, with packaging, weighed 12.85 grams and was placed into ATF custody as Item 2. Due to safety concerns, the Fentanyl was not field tested. The Fentanyl was placed into evidence and sent to the DEA laboratory for further analysis.

6.      On April 15, 2019, CI #1 placed a telephone call to M. DILLON, (702) 279-9808. The CI told M. DILLON that his "cousin," SA Zayas, asked about the price of Fentanyl. M. DILLON confirmed that SA Zayas wanted "mixed" and quoted $2,800 per ounce. CI #1 questioned the price. M. DILLON claimed that the first purchase of Fentanyl was sold at half price. M. DILLON also claimed that this Fentanyl is stronger than the previous. CI #1 told M. DILLON that he had to call SA Zayas and would call him back. In a second telephone call, CI #1 informed M. DILLON that SA Zayas was willing to pay $2,300 per ounce. M. DILLON agreed to the price. CI #1 assured M. DILLON that there would be future purchases. CI #1

asked M. DILLON if they could get a meeting with the supplier in order to get the "recipe." M. DILLON stated that he can get "raw" and the supplier would give him the "formula." The CI stated that they will do the deal on Wednesday and they can talk more about it afterwards.

7. On April 16, 2019, CI #1 received a telephone call from M. DILLON, (702) 279-9808. M. DILLON called to see if everything was "a go" for the Fentanyl purchase the following day. The CI responded that it was. M. DILLON indicated that he would contact the CI when it arrived. M. DILLON and the CI agreed to meet in the afternoon.

8. On April 17, 2019, CI #1 received a text message from M. DILLON, (702) 279-9808. The text read: "Good Morning to You Tone! O Hope That all Is Well with you? Our Party has Arrived. They Are Both With Me Now."

9. On April 17, 2019, SA Zayas, CI #1, and CI #2 traveled to the 1001 East Carey Way, Apartment 809, Las Vegas, NV. Upon arriving and parking, CI #1 contacted M. DILLON via cellular telephone and advised that he/she had arrived. A short while after, SA Zayas observed M. DILLON walking in the direction of the vehicle. M. DILLON entered the CI's vehicle and sat in the rear bench seat, behind the front passenger seat. M. DILLON opened a DVD case, which he brought into the vehicle, and stated, "this is how it came, look". Inside the case, SA Zayas observed two (2) red colored envelopes. M. DILLON opened the envelopes and removed a clear plastic bag containing alleged Fentanyl, from each envelope. SA Zayas, utilizing a scale, weighed each bag. SA Zayas found each bag to weigh approximately one (1) ounce. M. DILLON then placed the clear plastic bags into each envelope and back into the case. M. DILLON provided the case to SA Zayas. M. DILLON stated that one point six (1.6) grams of raw Fentanyl produces nine (9) ounces of mixed Fentanyl ready to be sold for use. CI #1 discussed with M. DILLON purchasing raw Fentanyl and obtaining the formula to dilute the

6

narcotic for sale. CI #1 questioned M. DILLON if he could arrange a meeting with the person with knowledge to dilute the Fentanyl. M. DILLON replied "it's my brother, my baby brother." M. DILLON advised that his brother had "nine (9) to ten (10) keys of this shit, right now." M. DILLON displayed to SA Zayas, CI #1, and CI #2 a video of currency on his cellular telephone, and M. DILLON advised that the currency belonged to his brother. During this time, CI #2 questioned M. DILLON concerning firearms. M. DILLON stated he had a source for firearm(s). SA Zayas provided M. DILLON with four thousand six hundred dollars ($4,600.00) to complete the sale of the two (2) ounces of Fentanyl. M. DILLON exited the vehicle and SA Zayas, CI #1 and CI #2 departed the area.

10. On April 17, 2019, upon conclusion of the Fentanyl transaction, surveillance agent/agents observed M. DILLON exit the CI's vehicle and enter 1001 East Carey Way, Apartment 809, Las Vegas, NV. Surveillance also revealed M. DILLON entering and exiting the 1001 East Carey Way, Apartment 809, Las Vegas, NV before the deal occurred on April 17, 2019.

11. The suspected Fentanyl purchased from M. DILLON on April 17, 2019 was contained in two plastic wrappers separately placed inside two red envelopes and concealed within a DVD case. The weight of the Fentanyl with the plastic wrapper weighed approximately 59.88 grams. The Fentanyl and plastic wrappers were placed into ATF custody as Item 3. Due to safety concerns, the Fentanyl was not field tested. The Fentanyl was placed into evidence and sent to the DEA laboratory for further analysis.

12. On April 18, 2019, at approximately 1555 hours, SA Zayas, in the company of CI #1 and CI #2, traveled to 1001 East Carey Way, Apartment 809, Las Vegas, NV. Upon arriving and parking, CI #1 contacted M. DILLON via cellular telephone. M. DILLON advised that he

was on a bus and would be arriving later. As a result, SA Zayas, CI #1, and CI #2 departed the area. At approximately 1650 hours, SA Zayas, CI #1, and CI #2 returned to 1001 East Carey Way, Apartment 809, Las Vegas, NV. Upon arriving and parking, CI #1 contacted M. DILLON via cellular telephone. M. DILLON stated that he was at his room, 1502 South Las Vegas Boulevard, Las Vegas, NV and not the apartment. Upon concluding the call, SA Zayas and the CIs departed the area. At approximately 1719 hours, SA Zayas and the CIs traveled to 1502 South Las Vegas Boulevard. Upon arriving and parking at the location, SA Zayas observed M. DILLON standing next to a group of individuals and he subsequently walked in the direction of the vehicle. M. DILLON entered the vehicle and sat in the rear bench seat, behind the front passenger seat. M. DILLON removed from his waist area a Crown City Arms, .45 caliber pistol, serial number 04575 with seven (7) rounds of ammunition in the magazine. M. DILLON handed the firearm to SA Zayas. SA Zayas confirmed that the price of the firearm was three hundred and fifty dollars ($350.00). SA Zayas provided M. DILLON with three hundred and fifty dollars ($350.00) and an additional fifty dollars ($50.00) as a broker's fee. M. DILLON exited the vehicle and SA Zayas, CI #1, and CI #2 departed the area. The firearm was entered into ATF custody as Item 6.

13. ATF SA Yun, a recognized expert in determining interstate nexus for firearms, examined Item 6. It is the opinion of SA Yun that Item 6 was manufactured by Crown City Arms in Cortland, New York. Furthermore, it is the opinion of SA Yun that because the firearm was received and/or possessed in the State of Nevada, it traveled in or affected interstate and/or foreign commerce and it is a "firearm" as defined in Title 18, United States Code, Chapter 44, Section 921(a)(3).

8

14. On April 22, 2019, M. DILLON, a convicted felon, attempted to sell a firearm to SA Zayas at 1001 East Carey Way, Apartment 809, Las Vegas, NV. On April 22, 2019, at approximately 0948 hours, CI #1 called M. DILLON, (702) 517-2013. CI #1 asked M. DILLON if he/she could purchase the other firearm that was initially offered during the previous deal. M. DILLON indicated that it was available but "they" wanted $500. M. DILLON described the firearm as a Smith and Wesson 9 mm. CI #1 needed to contact his "cousin," SA Zayas, and call M. DILLON back. At approximately 1005 hours, CI #1 called M. DILLON, (702) 517-2013. CI #1 indicated they would be available after 1500 hours. M. DILLON responded that the previously discussed firearm had been sold but there was another one available. M. DILLON indicated that he would provide more details about the firearm for sale. At approximately 1339 hours, CI #1 called M. DILLON, (702) 517-2013. CI #1 indicated they were ready to purchase the firearm. M. DILLON indicated the meeting location would be at 1001 East Carey Way, Apartment 809, Las Vegas, NV. The CI stated needed to pick up his "cousin" and would be ready thirty minutes later. At approximately 1353 hours, CI #1 received a call from M. DILLON, (702) 517-2013. M. DILLON stated that he could not reach the supplier of the firearm. The supplier was supposed to drop off the gun the previous evening. M. DILLON stated that he would call the CI back once he is in touch with the supplier. On April 22, 2019, approximately 1530 hours, CI #1 called M. DILLON, (702) 517-2013. M. DILLON stated that he still could not reach the supplier of the firearm. The CI and M. DILLON agreed to do the deal the following day if M. DILLON cannot reach the supplier by 1700 hours. This transaction was never finalized.

15. On May 9, 2019, at approximately 1519 hours, SA Richard Zayas, CI #1, and CI #2 traveled to the parking lot at 1001 East Carey Way, Apartment 809, Las Vegas, NV. Upon

arriving and parking, CI #1 attempted to contact M. DILLON via cellular telephone. Prior to completing the call, SA Zayas observed M. DILLON walking in the direction of the vehicle. M. DILLON entered the vehicle and sat in the rear bench seat, behind the front passenger seat. SA Zayas, through CI #1, began discussing the purchase of Fentanyl. CI #1 explained that they were traveling to Los Angeles the following day. M. DILLON began to complain that he would not wait until Monday to conduct the sale due to his own travel plans. M. DILLON further complained that they were only discussing the sale of two (2) ounces of Fentanyl. M. DILLON stated he was taking a loss at the price at which he had previously sold two (2) ounces. M. DILLON explained the price structure of selling ounces of Fentanyl. SA Zayas, through CI #1, questioned how much a half (1/2) kilogram of Fentanyl would cost. M. DILLON replied that he had offered a deal to sell "raw" Fentanyl, two point eight (2.8) grams which produced nine (9) ounces of diluted Fentanyl. M. DILLON continued to press the sale of "raw" Fentanyl, which CI #1 and SA Zayas would have to dilute prior to selling. SA Zayas, through CI #1, explained that they did not want to purchase pure Fentanyl because they did not want to kill anyone. CI #1 expressed that they wished to purchase diluted Fentanyl. M. DILLON advised that the price of a half (1/2) kilogram of Fentanyl would be fifty thousand four hundred dollars ($50,400.00). CI #1 explained the price to SA Zayas. SA Zayas responded he wished to purchase a quarter (1/4) kilogram at twenty five thousand dollars ($25,000.00). M. DILLON replied the price would be twenty five thousand two hundred dollars ($25,200.00). SA Zayas agreed to the price. M. DILLON advised that if he called his source prior to 2:00 PM any day, his source can "get it out" for receipt the next day. CI #1 requested to conduct the sale on Monday, May 13, 2019. M. DILLON advised that he was frustrated that they had not conducted a transaction for an extended period of time. M. DILLON and CI #1 agreed to the sale of nine (9) ounces of diluted

Fentanyl, for the sum of twenty five thousand dollars ($25,000.00), to occur on Monday, May 13, 2019. M. DILLON stated that he was going to try and have the Fentanyl by Saturday, May 11, 2019. CI #1, SA Zayas, and M. DILLON agreed to conduct the sale during the afternoon hours. M. DILLON exited the vehicle and SA Zayas, CI #1, and CI #2 departed the area.

16. On May 7, 2019, Layne Higgins, Senior Forensic Chemist, Drug Enforcement Administration (DEA), indicated that a preliminary analysis detected the presence of Fentanyl in Item 2 and Item 3.

17. On May 11, 2019, SA Wellman reviewed documents associated to M. DILLON that were obtained from the Second Judicial District Court of Nevada in and for the County of Washoe. SA Wellman noted that on March 5, 2015 in Case CR13-2046, M. DILLON was convicted of Attempted Coercion NRS 193.330 (Felony), Possession of a Controlled Substance for the Purpose of Sale NRS 433.337 (Felony) and Ex-Felon in Possession of a Firearm NRS 20.360 (Felony).

18. On May 13, 2019, CI #1 received a text message from M. DILLON, (702) 517-2013. The message contained a photograph of nine red envelopes that are consistent with the two red envelopes that contained the Fentanyl purchased on April 17, 2019.

19. On May 13, 2019, CI #1 placed a phone call to M. DILLON, (702) 517-2013. During the conversation, M. DILLON acknowledged that the transaction to purchase nine (9) ounces of Fentanyl on May 14, 2019 would take place at the "apartment."

20. On May 13, 2019, your affiant observed an electronic copy of a Nevada Department of Motor Vehicles Identification Card (ID) for M. DILLON issued February 26, 2019. The ID indicates his address to be 1001 E. Carey Ave, Apt. 809, North Las Vegas, NV.

21. On May 14, 2019, at approximately 1456 hours CI #1 received a call from M. DILLON requesting to delay the transaction until later this date. At 1530 hours, CI #1 called M. DILLON. M. DILLON indicated that he could meet up at the "spot" at 1630 hours. A third call was placed by CI #1 to M. DILLON at 1602 hours in which M. DILLON stated there was bad news; M. DILLON would not be able to make the deal today because he could not get the "work" until tomorrow. At 1758 hours, M. DILLON called CI #1 stating the package did not arrive, but should be there by 1600-1630 hours tomorrow.

22. On May 15, 2019, at approximately 1325 hours, CI #1, contacted M. DILLON via cellular telephone, (702) 517-2013 and confirmed a meeting at 4:30 p.m. At approximately 1627 hours, CI #1 contacted M. DILLON via cellular telephone, (702) 517-2013. CI #1 questioned M. DILLON "where you at?" M. DILLON responded "I'm right here Primo." M. DILLON questioned CI #1 if he/she was going to park.

23. At approximately 1613 hours, a black male adult, later identified as R. DILLON, exited apartment 809. R. DILLON walked north of building eight and sat on the curb of the sidewalk in front of building one while M. DILLON waited on the park bench.

24. At approximately 1616 hours, CI #1 and CI #2 traveled to 1001 East Carey Avenue, Las Vegas, Nevada. Upon arriving and stopping, CI #1 contacted M. DILLON via cellular telephone. M. DILLON walked to the vehicle and entered, sitting in the rear bench seat behind the front passenger seat. M. DILLON opened a black colored backpack, which he brought into the vehicle, and removed three (3) DVD cases. M. DILLON stated, "they're still in the DVD." CI #1 advised DILLON that his cousin, S/A Zayas, was nearby with the currency. Upon arriving and parking parallel to S/A Zayas' vehicle, CI #1 exited his/her vehicle and

12

walked to meet with S/A Zayas. S/A Zayas exited his vehicle and met with CI #1. At this time, ATF agents arrested M. DILLON.

25. Upon arrest of M. DILLON, SA Yun observed a black rigid case on the floor of the rear passenger seat of the UC vehicle. ATF SA Yun also observed three DVD cases located on the rear driver side seat. Upon inspection of one of the three DVD cases, three red envelops were located inside the case. In each red envelop contained a presumptive ounce of suspected fentanyl. Approximately nine (9) ounces of suspected fentanyl was recovered from M. DILLON. Due to safety concerns, the Fentanyl was not field tested. The Fentanyl was placed into evidence and sent to the DEA laboratory for further analysis.

26. At approximately 1629 hours, R. DILLON stood up and walked east on the sidewalk towards the entry/exit area of the complex. R. DILLON appeared to be on his phone as he walked away.

27. R. DILLON was continually looking east towards the Smith's parking lot and looking at this phone. As officers attempted to contact R. DILLON, he ran back towards apartment 809, while looking back towards the officers. R. DILLON appeared to be holding something in his hand as he ran. As law enforcement officers gained control of R. DILLON, the object in his hand flew about 6 feet away, landing near the entryway to an apartment. The item was located and identified as a Jimenez Arms, J.A. 380, a .380 caliber pistol bearing SN 417792, loaded with loaded with six (6) rounds of .380 caliber ammunition containing the head-stamp "Aguila".

28. On May 15, 2019, R. DILLON voluntarily waived his *Miranda* rights and stated that the firearm fell out his pocket. R. DILLON stated that he obtained the firearm from his nephew's friend that lived in the apartment complex.

29. On May 16, 2019, your affiant reviewed documents from the Second Judicial Court of the State of Nevada in and for the County of Washoe. Case CR95-0821 indicated that R. DILLON was convicted of NRS 200.400, Battery with Intent to Commit Robbery (felony), on or about May 23, 1995. Case CR02-0658 indicated that R. DILLON was convicted of NRS 453.336, Possession of a Controlled Substance (felon), on or about June 27, 2002. Case CR05-2708 indicates R. DILLON was convicted of NRS 200.485, 200.481 and 33.018, Domestic Battery (felony), on or about January 31, 2006.

30. On May 15, 2019, M. DILLON voluntarily waived his *Miranda* rights and stated that the reason he would involve himself in anything like this was to make money. When asked where the Fentanyl was coming from, M. DILLON explained that this was a one-time deal.

31. On May 16, 2019, SA Yun, a recognized expert in determining interstate nexus for firearms and ammunition, determined based upon the description of the ammunition, in conjunction with the research, knowledge and experience that the ammunition was manufactured in Mexico and because it was received and/or possessed in the State of Nevada, it traveled in or affected interstate and/or foreign commerce.

32. Upon booking R. DILLON, agents discovered a Southwest Airlines boarding pass dated May 15, 2019 for flight 1966 from PDX (Portland International Airport) to LAS (McCarran International Airport).

Micah Wellman, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Subscribed to and sworn to before me this 17th day of May 2019.

UNITED STATES MAGSTRATE JUDGE